UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
:
JORDAN MARTINEZ, et al.,                                     :
:
                     Plaintiffs,    :    24-cv-2058 (JPO) (OTW)
:
      -against-                                          :
:    **OPINION & ORDER**
ELEGANTE SERVICES, INC., et al.,                             :
:
                     Defendants.    :
:
-------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

**I.    INTRODUCTION**

Plaintiff Jordan Martinez ("Martinez") and opt-in Plaintiffs Joel Bautista ("Bautista"), Craig Murrell ("Murrell"), Rafael Ojeda ("Ojeda"), Cornelio Mayor ("Mayor"), Joel Burgos ("Burgos"), and Geovanny Madera Rodriguez ("Rodriguez")[1] (collectively, "Plaintiffs") bring this action on behalf of themselves and others similarly situated against Defendants Elegante Services, Inc. ("Elegante Services"), Jose Viloria ("Viloria"), and Angela Pratts ("Pratts") (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), alleging, *inter alia*, unpaid wages and overtime compensation. Plaintiffs now move for an order (1) granting conditional collective certification pursuant to 29 U.S.C § 216(b); (2) requiring Defendants to disclose contact information for putative collective members employed from March 19, 2018 to present; (3) authorizing the posting and dissemination of proposed notices and reminder notices; and (4) tolling the statute of

---

[1] Plantiffs Burgos and Rodriguez opted-in to this suit after the filing of this motion.

1

limitations from the date of the initial conference or, alternatively, from the filing of Plaintiffs' motion for collective certification. (ECF 31). For the following reasons, Plaintiffs' motion is **GRANTED** in part and **DENIED** in part.

II. BACKGROUND

Defendant Elegante Services provides non-emergency medical transportation services. (ECF 1 at ¶ 12). Plaintiff Martinez worked for Defendant as a non-exempt, hourly-paid medical transportation driver operator from about September 2022 to March 2024. (ECF 33-Ex. E at ¶ 4). Plaintiffs Bautista, Ojeda, and Mayor worked for Defendant as non-exempt, hourly-paid helpers from about September 2022 to April 15, 2024; August 2023 to September 2024; and May 2022 to the present, respectively. (ECF Nos. 33-Ex. G at ¶ 4; 33-Ex. I at ¶ 4; 33-Ex. K at ¶ 4). Plaintiff Murrell worked for Defendant as a non-exempt, hourly paid medical transportation driver operator and helper from about December 2022 to April 2024. (ECF 33-Ex. M at ¶ 4).

Plaintiffs allege that Defendants established a company-wide practice where hours were automatically deducted for meal breaks, regardless of whether employees actually received one. (ECF Nos. 1 at ¶ 17; 33-Ex. E at ¶ 7; 33-Ex. G at ¶ 7; 33-Ex. I at ¶ 7; 33-Ex. K at ¶7; 33-Ex. M at ¶ 7). Plaintiffs state that this policy resulted in Defendants failing to pay them standard and overtime wages, depending on if employees worked up to or over forty hours per week. (ECF Nos. 1 at ¶ 18; 33-Ex. E at ¶¶ 10–13; 33-Ex. G at ¶¶ 10–13; 33-Ex. I at ¶¶ 10–13; 33-Ex. K at ¶¶ 10–13; 33-Ex. M at ¶¶ 8–11).

Plaintiffs state that when Defendant Garcia, operating manager of Elegante Services, was informed about the uncompensated wages as a result of the automatic meal break deductions, she responded that it was company policy to the reduce employee's time and pay

for meal breaks, even if the break was not actually taken. (ECF Nos. 33-Ex. E at ¶ 9; 33-Ex. G at ¶ 9; 33-Ex. I at ¶ 9; 33-Ex. K at ¶ 9).

In their declarations, Plaintiffs Martinez and Bautista state that they engaged in or witnessed conversations involving at least nine other similarly situated employees who did not receive compensation as a result of the automatic deduction policy.[2] (ECF Nos. 33-Ex. E at ¶¶ 18—19; 33-Ex. G at ¶¶ 18—19).

Additionally, Plaintiffs Martinez, Bautista, and Mayor allege that Defendants also failed to pay them at any rate of compensation for regular and overtime hours aside from the practice of automatic meal time deductions. (ECF Nos. 33-Ex. E at ¶¶ 14—15; 33-Ex. G at ¶¶ 14—15; 33-Ex. K at ¶¶ 14—15). Plaintiffs Martinez and Bautista also state that they personally witnessed other non-exempt employees work more than forty hours per week and fail to receive overtime payment from Defendants. (ECF Nos. 33-Ex. E at ¶ 20; 33-Ex. G at ¶ 20).

Plaintiffs filed this action on March 19, 2024. (ECF 1). Six opt-in plaintiffs have filed consent forms to become a party plaintiff under FLSA. (ECF Nos. 8, 9, 10, 19, 59, 60). After an initial conference, I directed parties to engage in discovery. (ECF Nos. 16, 17). Defendants and Plaintiffs have exchanged time and payroll records, declarations, and interrogatories. (ECF Nos. 18, 24). On May 22, 2025, Plaintiffs filed this motion for conditional certification as a collective action. (ECF 31).

### III.    LEGAL STANDARDS

#### A. Second Circuit Standards to Conditional Certification

---

[2] Opt-in Planitffs Burgos and Rodriguez are included in the nine named employees.

3

FLSA allows an employee to bring an action against an employer on behalf of themselves and other similarly situated employees. 29 U.S.C. § 216(b). Where a plaintiff seeks to bring a claim on behalf of similarly situated employees, courts have discretion to implement section 216(b) "by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (internal quotations omitted). Collective certification under the FLSA involves two steps: (1) determining whether there exist individuals similarly situated to the named plaintiff who have also been the victim of FLSA violations such that notice of the suit should be circulated; and (2) after providing notice to potential collective members, determining whether any new plaintiffs who opted-in to the suit are in fact "similarly situated" to the named plaintiff. *Id*. at 555. At the first stage of collective certification, the Court requires only a "modest factual showing that [the named plaintiffs] and others together were victims of a common policy or plan that violated the law." *See Glatt v. Fox Searchlight Pictures*, Inc., 811 F.3d 528, 540 (2d Cir. 2016). "[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)). Instead, the Court just looks to the pleadings and submitted affidavits to determine whether there are other potential collective members who are similarly situated to the named plaintiff(s). *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 560 (S.D.N.Y. 2015). Although this is a fairly low evidentiary standard, the plaintiff cannot merely rely on "unsupported assertions." *See Myers*, 624 F.3d at 555; *see also Morales v. Plantworks, Inc.*, 05-

CV-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (finding insufficient "conclusory allegation" in complaint that employees are similarly situated).

### B. Modest Plus Standard

Defendants ask the Court to adopt a "modest plus" standard. "Where the parties have completed, or substantially completed, conditional collective certification discovery, courts in this District have applied 'a modest plus' standard of review to motions under FLSA Section 216(b)." *West v. LaserShip, Inc.*, 21-CV-5382 (LTS) (SLC), 2025 WL 2555496, at *9 (S.D.N.Y. Sept. 5, 2025) (internal citations omitted). The "modest plus" standard asks courts to "look beyond the pleadings and affidavits submitted by Plaintiffs and . . . consider the evidence submitted by both parties." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016) (internal citations omitted). "[T]he difference between the original and 'modest-plus' standards is whether the court considers only the pleadings and attached documents, or those documents plus the defendant's opposing materials." *Tay v. New York & Presbyterian Hosp.*, 22-CV-8379 (KMK), 2024 WL 4286226, at *6 (S.D.N.Y. Sept. 24, 2024) (internal citations omitted). In effect, the modest plus standard establishes a more stringent approach to the first stage of the original Second Circuit standard. Though the Court still does not decide the merits of the case nor draw "negative inferences of any sort where evidence is lacking," "additional evidence obtained in discovery should show that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs," or in effect, "advanced the ball down the field" through discovery. *Korenblum*, 195 F. Supp. 3d at 482 (internal citations omitted).

Courts in this district have adopted the modest plus standard when parties have engaged in anywhere from six months to a year's worth of collective certification discovery. *See*

5

*Brown v. Barnes & Noble, Inc.*, 16-CV-7333 (RA), 2019 WL 5188941, at *2 (S.D.N.Y. Oct. 15, 2019) (applying the standard after six months of collective certification discovery); *Tay*, 2024 WL 4286226 at *6 (applying the standard after eight months of discovery); *West*, 2025 WL 2555496 at *9 (applying the standard after over a year's worth of discovery). Here, parties have engaged in approximately a year of discovery targeted at collective certification, well within the time range deemed appropriate for application of the standard. Parties have exchanged paystubs, timesheets, interrogatories, and declarations pertaining to the collective that have subsequently been utilized in motion letters. *See Stewart v. Hudson Hall LLC*, 20-CV-885 (PGG) (SLC), 2021 WL 1750368, at *7 (S.D.N.Y. May 4, 2021) (applying the modest plus standard where the plaintiff relied on "paystubs, timesheets, and . . . testimony" taken in discovery to support conditional certification). Accordingly, I find it appropriate to apply the modest plus standard here.

## IV.     ANALYSIS

Plaintiffs seek conditional collective certification of their claim that Defendants failed to pay their employees over time wages. Defendants argue that their automatic meal break deduction policy is not in itself unlawful and therefore is insufficient to bind the collective action. (ECF 46 at 9-11).  In accordance with the standards above, in determining whether similarly situated individuals were victims of a common policy or plan that violated the law, the Court looks to all evidence submitted by both parties. *See Korenblum*, 195 F. Supp. 3d at 482.

Pursuant to Department of Labor regulations and Second Circuit precedent, bona fide meal periods are not worktime but may become work if an employee is required to perform duties during their break. *See* 29 C.F.R. § 785.19(a); *Reich v. S. New England Telecomms. Corp.*,

121 F.3d 58, 65 (2d Cir. 1997). Defendants are correct in their assertion that a policy that automatically deducts workers' time for meal breaks is not a per se legal violation. *See Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 321 (E.D.N.Y. 2014). However, when employers know or have reason to know that an employee worked through meal breaks and failed to provide compensation, the employer becomes liable for FLSA violations. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *Tay*, 2024 WL 4286226 at *11. Therefore, at this stage, "Plaintiff[s] must make a modest showing that [they] and other employees were routinely working through or during scheduled meal breaks, without compensation, and with knowledge of administration . . .." *Tay*, 2024 WL 4286226 at *11 (internal citations omitted).

Plaintiffs undoubtedly satisfy this burden. Plaintiffs provide several declarations stating that they regularly worked through their meal breaks and went uncompensated as a result of the automatic meal time deduction policy. (ECF Nos. 33-Ex. E at ¶ 7; 33-Ex. G at ¶ 7; 33-Ex. I at ¶ 7; 33-Ex. K at ¶7; 33-Ex. M at ¶ 7). Plaintiffs provide four declarations stating that Defendants were informed of their uncompensated time as a result of this automatic meal time deduction policy. (ECF Nos. 33-Ex. E at ¶ 9; 33-Ex. G at ¶ 9; 33-Ex. I at ¶ 9; 33-Ex. K at ¶ 9). Plaintiffs also state that they were privy to conversations involving at least nine named, similarly situated employees who failed to receive compensation as a result of this policy. (ECF Nos. 33-Ex. E at ¶¶ 18—19; 33-Ex. G at ¶¶ 18—19). "[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of *one* plaintiff's affidavit." *Hernandez v. Bare Burger Dio Inc.*, 12-CV-7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases) (emphasis added); *Khamsiri v. George & Grank's Japanese Noodle*

7

*Rest. Inc.*, 12-CV-265 (PAE), 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (holding one declarant's "personal observations that she and other employees in tipped positions, who performed work 'similar' to hers, were paid less than the statutory minimum and not compensated for overtime," was sufficient to grant conditional collective certification).

Three Plaintiffs also allege that aside from this deduction policy, they failed to receive overtime pay from Defendants. (ECF Nos. 33-Ex. E at ¶¶ 14—15; 33-Ex. G at ¶¶ 14—15; 33-Ex. K at ¶¶ 14—15). Two of these Plaintiffs witnessed many of the nine named similarly situated employees also fail to receive overtime pay. (ECF Nos. 33-Ex. E at ¶ 20; 33-Ex. G at ¶ 20). These declarations by themselves establish a common plan or scheme sufficient to grant the collective certification.

At this stage, Defendant's counter evidence is unavailing.  Defendants provide declarations asserting that Plaintiffs were in fact compensated for work performed during hours that were automatically deducted for their time and that Plaintiffs did not inform management of their uncompensated pay as a result of these automatic meal time deductions. (ECF Nos. 42, 43, 44, 45). "It is well established that defendants may not defeat a court's determination that [p]laintiffs are similarly situated by submitting their own affidavits." *Tay*, 2024 WL 4286226 at *11 (internal citations omitted). This is also true even when applying the modest plus review. *Id*.

Additionally, while both Plaintiffs and Defendants provide payroll records supporting their claims, their interpretation of the evidence is a factual dispute. Whereas Defendants' data provides notation where the employees took "NO BREAK" during automatic meal time deductions, suggesting that the payroll is accurate in compensating for employees' break-time

8

work, Plaintiffs' calculations based on the same data indicates that Plaintiffs went uncompensated for their break-time work, suggesting that the payroll data is inaccurate. (ECF Nos. 33-Ex. O-S; 41-Ex. A-R)

Defendants additionally ask the Court to narrow the proposed collective to drivers and helpers because the positions of "medical transportation services" and "laborer" do not exist within the company.[3] (ECF 46 at 11). In FLSA exemption cases, the definition of "similarly situated" rests on the likeness of individuals with respect to their job requirements, pay provisions, and exposure to a common policy or scheme. *See Myers*, 624 F.3d at 555. Here, while named Plaintiffs are indicated as medical transportation driver operators and helpers, Plaintiffs provide no indication that the role of "laborer" exists or shares similar job requirements or pay provisions as a driver or helper.

Accordingly, the Court **GRANTS** conditional certification for workers of Defendant Elegante Services who were employed as a non-exempt, hourly paid medical transportation drivers, drivers, or helpers.

V.   **NOTICE OF PENDENCY**

   A. **Language of Notice**

As discussed above, the Court will conditionally certify a collective of medical transportation drivers, drivers, and helpers. Plaintiffs shall revise the scope of the notice accordingly.

---

[3] The Court acknowledges that Plantiffs' declarations indicate that Defendants employed individuals working as "medical transportation services." (ECF Nos. 33 at 10; 33-Ex. E at ¶ 16; 33-Ex. G at ¶ 16). However, Plaintiffs' proposed collective action ultimately includes "non-exempt, hourly paid medical transportation driver, driver, helper, and/or laborer, and/or in a similarly situated position," not medical transportation services. (ECF 33 at 4).

*i.  Statute of Limitations*

Plaintiffs request the proposed notice be sent to all members of the putative collective from March 19, 2018 to the present, extending the statute of limitations from the two to three-year period under FLSA to the six-year extension under NYLL. (ECF 32 at 8, 13—14). Defendants assert that the time be limited to the three-year FLSA maximum. (ECF 46 at 17—20).

In the interest of judicial economy, courts in this Circuit have adopted the six-year NYLL statute of limitation period when there is a potential that plaintiffs, who may have claims under the NYLL, would otherwise be time barred by FLSA standards and if there would be no undue burden on the defendant's business operations. *See Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011); *Schwerdtfeger v. Demarchelier Mgmt.*, Inc., 10-CV-7557 (JGK), 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011). "[T]he goals of the notice are to make as many potential plaintiffs as possible aware of th[e] action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants*." Lazaar v. Anthem Companies, Inc.*, 678 F. Supp. 3d 434, 442 (S.D.N.Y. 2023) (internal citations omitted). Here, given the size of Defendant's company and the potential employees that may have time-barred NYLL claims if not for an extended statute of limitations period, Plantiffs' request for an extended notice date is granted to six-years from the March 19, 2024 date of filing to **March 19, 2018**.

*ii.  Opt-In Period*

Plaintiffs' request that the Court direct the opt-in period to remain open for sixty days is undisputed.  "The standard opt-in period in this Circuit, following conditional certification, is 60

days." *Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 134 (S.D.N.Y. 2022). The Court therefore grants the sixty-day opt-in period.

### iii. Other Language Modifications

Defendants raise a number of issues regarding the language of the proposed notice that this Court agrees should be amended. First, the notice should include contact information for defense counsel. *See Slamna v. API Restaurant Corp.*, 12-CV-757 (RW), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013) ("Courts in this Circuit have generally concluded that such information is appropriate for inclusion in a notice of collective action"). Second, all references to New York state law should be omitted to avoid confusion about the nature of the collective action. *See Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 612 (S.D.N.Y. 2016). Plaintiffs are directed to update the notice language accordingly.

Defendants raise other language issues that the Court believes do not need modification. First, the consent forms may keep the original "Consent to Join" language as courts in this Circuit have routinely approved the use of "Consent to Join" forms for FLSA notices. *See generally Robles v. Liberty Rest. Supply, Corp.*, 12-CV-5021 (FB) (VMS), 2013 WL 6684954 (E.D.N.Y. Dec. 18, 2013); *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508 (E.D.N.Y. 2011); *Fa Ting Wang v. Empire State Auto Corp.*, 14-CV-1491 (WFK) (VMS), 2015 WL 4603117 (E.D.N.Y. July 29, 2015); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445 (S.D.N.Y. 2011). Second, the contingency fee language provided by Plaintiffs in the answer to Question 10 is sufficiently clear in explaining that attorneys' fees will only be paid unless the case is successful. *See Han v. Madison Ave. Realties, LLC*, 22-CV-382 (LJL), 2022 WL 2609003, at *6 (S.D.N.Y. July 8, 2022) (noting that including language that potential plaintiffs may be liable

11

for costs if the matter does not prevail to be "unnecessary and potentially confusing") (internal citations omitted); *Alberto v. Rico Pollo #2 Rest. Corp.*, 18-CV-4762 (BMC), 2018 WL 6813057, at *5 (E.D.N.Y. Dec. 26, 2018). Third, the language informing potential opt-in plaintiffs of their discovery participation obligations is also sufficiently detailed, and any further language regarding the scope of discovery is unnecessary. *See Han,* 2022 WL 2609003 at *6; *Hunter v. Next Level Burger Co., Inc.*, 23-CV-03483 (HG), 2024 WL 686929, at *4 (E.D.N.Y. Feb. 20, 2024). Fourth, Defendants ask that language in Question 3 be stricken because it was not included in Plantiffs' original complaint.[4] However, this allegation is included the complaint as unpaid overtime wages for hours worked over forty hours per week. (ECF 1 at ¶¶ 32, 41). Finally, language that consent forms may also be submitted to the Clerk of the Court, in addition to Plantiffs' counsel, does not need to be included. Though courts in this Circuit remain split on this issue, directing consent forms to Plaintiffs' counsel ultimately reduces the burden on opt-in plaintiffs and the court. *See Zhongle Chen v. Kicho Corp.*, 18-CV-7413 (PMH)(LMS), 2020 WL 1900582, at *13 n.25 (S.D.N.Y. Apr. 17, 2020) (collecting cases); *Nahar v. Dozen Bagels Co. Inc.*, 15-CV-1613 (ALC) (FM), 2015 WL 6207076, at *7 (S.D.N.Y. Oct. 20, 2015).

The parties shall meet and confer on the language of the proposed notice. Plaintiff shall file the revised proposed notice by **December 23, 2025**. If Defendants still have objections to the notice's language after meeting and conferring with Plaintiff, they may file objections by **December 30, 2025**. Following the Court's approval of the notice, Plaintiff may begin distributing the notice to members of the conditionally certified collective.

---

[4] "Plaintiffs also allege that, on certain occasions, Defendant deducted additional time from their hours worked for additional hours worked other than during their meal breaks, and did not pay them any wages for these hours worked." (ECF 33-Ex A. at 2).

12

### B. Distribution of Notice

#### i. Circulation by Text and Email

Plaintiffs additionally request that the notice be distributed via email and text message. (ECF 32 at 16—17). This is appropriate where, as here, "the nature of the employer's business facilitated a high turnover rate among employees." *See Vasto v. Credico (USA) LLC*, 15-CV-9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016). Defendants contest that Plaintiffs have not provided evidence supporting that Defendant's business facilitates a high turnover rate.

Courts in this Circuit, including this Court, have included telecommunications companies, restaurants, and grocery stores as high turnover businesses, especially given the one-to-three-year employment time frames of their workers. *See id.*; *Huerta v. Antillana & Metro Supermarket, Corp.*, 23-CV-0002 (RA) (OTW), 2024 WL 4648016, at *4 (S.D.N.Y. Nov. 1, 2024); *Shiqiang Gao v. A Canaan Sushi Inc.*, 18-CV-6442 (GBD) (OTW), 2019 WL 6724359, at *4 (S.D.N.Y. Dec. 10, 2019). Here, Defendants' business is no different.

#### ii. Language Accommodation

As requested by Plaintiffs, the notice shall be translated into Spanish to accommodate workers whose primary language is not English. (ECF 32 at 17). *See Shiqiang*, 2019 WL 6724359 at *4; *Lijun Geng v. Shu Han Ju Restaurant II Corp.*, 18-CV-12220 (PAE) (RWL), 2019 WL 4493429, at *19 (S.D.N.Y. Sept. 9, 2019) (noting translation requests for notices are "commonly granted").

### C. Reminder Notice

Plaintiffs also request that reminder notices be sent thirty days after the original mailing of notice via mail, email, and text message. (ECF 70 at 26). "Reminder notices further serve the

purpose of notifying all potential opt-in plaintiffs of the pendency of the action." *Ding v. Mask Pot Inc.*, 20-CV-6076 (LDH) (MMH), 2024 WL 4351081, at *13 (E.D.N.Y. Oct. 8, 2024). The proposed reminder notices serve to alert any potential collective members of the impending deadline for their response and the appropriate method of joining the lawsuit. The proposed reminder notices must meet the FLSA standard for notification, including the below modifications.

The reminder notices omit "critical reminders about opt-in plaintiffs' right to choose their own attorney." *Id*. at *14. Plaintiffs must add language to the reminder notices that explains that opt-in plaintiffs may retain their own counsel. The reminder notices also do not remind potential opt-in plaintiffs about their discovery and document preservation obligations. *Id*. Plaintiffs should include an abridged version of the answer to Question 6 from the original notice to remind opt-in plaintiffs of their discovery obligations should they choose to join this action.

Subject to the above modifications Plaintiffs' request to send reminder notices thirty days after the original mailing of notice is granted. *See Qiang Lu v. Purple Sushi, Inc.*, 447 F. Supp. 3d 89, 98 (S.D.N.Y. 2020). For the reasons stated above, Plaintiffs' request that the reminder notices be distributed by email and text message is also granted. *See Vasto*, 2016 WL 2658172, at *16. The reminder notices shall also be distributed in both English and Spanish.

IV. **EQUITABLE TOLLING**

In the event that conditional certification is granted, Plaintiffs request that the statute of limitations be tolled until date of the initial conference or the filing of this motion. (ECF 32 at 26). The reason for this is that the statute of limitations for a potential opt-in plaintiff continues

to run "until that plaintiff files the written consent opting into the suit." *Whitehorn*, 767 F. Supp. 2d at 449. Equitable tolling is appropriate where the plaintiff shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007).

Here, Plaintiffs have not raised any "extraordinary circumstance" that warrants equitable tolling and have not presented any time-barred potential plaintiff. Instead, Plaintiffs claim that the Court's request that parties first engage in discovery before filing this motion caused delay. (ECF 32 at 26). Accordingly, the Court denies the request for equitable tolling at this time.

V. **PRODUCTION OF EMPLOYEE INFORMATION**

Plaintiffs request that Defendants produce a "computer-readable data file" containing the names, last known mailing addresses, email addresses, telephone numbers, cellular phone numbers, dates of employment, positions held, compensation rates, and primary languages of all potential opt-in plaintiffs. (ECF 32 at 25). Defendants contest the inclusion of compensation rates. (ECF 46 at 34). Courts routinely order production of contact information for potential opt-in plaintiffs. *See Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016). However, as other courts in this Circuit have noted, the production of compensation rates of employees is unnecessary for contacting potential plaintiffs. *See Johnson-Cradle v. KPS Affiliates Inc.*, 22-CV-1052 (PGG) (SLC), 2023 WL 3091675, at *8 (S.D.N.Y. Apr. 26, 2023). Accordingly, Defendants shall provide the above information, except for compensation rates, in electronic format if practicable, of putative collective members from March 19, 2018 through the present.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification is **GRANTED** in part, as set forth above. After meeting and conferring with Defendants, Plaintiffs shall submit their revised proposed notice by **December 23, 2025**. By **January 16, 2026**, Defendants shall produce to Plaintiff the contact and employment information, as outlined above, for all medical transportation drivers, drivers, and helpers employed by Defendants since March 19, 2018.

The Clerk of Court is respectfully directed to close ECF 31.

**SO ORDERED.**


*/s/ Ona T. Wang*

Dated: November 25, 2025         **Ona T. Wang**
   New York, New York            United States Magistrate Judge